ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JESÚS M. BURGOS AYALA, MARILYN COLÓN APONTE, BURGOS-COLÓN SOCIEDAD LEGAL DE GANANCIALES<br><br>Parte Apelado<br><br>V.<br><br>ADOLFO CRISCUOLO PÉREZ, WILMA M. VALLE FERRER, CRISCUOLO-VALLE SOCIEDAD LEGAL DE BIENES GANANCIALES<br><br>Parte Apelante | TA2025AP00640 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.: CU2022CV00029<br><br>Sobre: Nulidad de Contrato |
| ADOLFO CRISCUOLO PÉREZ, WILMA M. VALLE FERRER, AMBOS POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ELLOS<br><br>Parte Demandante<br><br>V.<br><br>JESÚS M. BURGOS AYALA; MARILYN COLÓN APONTE AMBOS POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Parte Demandada | | Caso Núm.: CU2025CV00003<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, la Juez Brignoni Mártir, el Juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 28 de enero de 2026.

Comparecen el Sr. Adolfo Criscuolo Pérez (señor Criscuolo Pérez) y la Sra. Wilma M. Valle Ferrer (señora Valle Ferrer) (en conjunto, los apelantes), y solicitan

la revocación de la *Sentencia Parcial* emitida y notificada el 10 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala de Fajardo (TPI o foro primario).[1] Mediante dicha *Sentencia Parcial* el foro primario declaró *Ha Lugar* la solicitud de sentencia sumaria parcial presentada por el Sr. Jesús M. Burgos Ayala, (señor Burgos Ayala) su esposa, la Sra. Marily Colón Aponte (señora Colón Aponte) y la Sociedad de Bienes Gananciales compuesta por ambos (en conjunto, los apelados), en cuanto a la claúsula contractual sobre devolución de depósito en un contrato de opción de compraventa, por haberse cumplido la condición suspensiva que se pactó en la página 5 del *Contrato de Arrendamiento y de Opción de Compraventa* suscrito por las partes. En consecuencia, el foro primario ordenó a los apelantes la devolución del depósito de cincuenta mil dólares ($50,000.00) pagado por los apelados por dicho concepto.

Por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia Parcial* apelada.

-I-

El 19 de mayo de 2022, los apelados instaron acción civil sobre incumplimiento, nulidad de contrato y daños y perjuicios, en contra de los apelantes, en la que solicitaron la devolución de cierto depósito realizado como parte de un contrato de arrendamiento y opción de compra suscrito entre ambas partes.[2]

Tras varios trámites procesales el TPI emitió Orden para la consolidación del caso CU2022CV00029 sobre

---

[1] Entrada Núm. 79 de SUMAC TPI.
[2] Caso Civil CU2022CV00029.

nulidad de contrato, instado por los apelados, con el CU2025CV00003 sobre cobro de dinero instado por los apelantes.[3]

El 15 de agosto de 2025 las partes presentaron *Informe de Conferencia con Antelación al Juicio*, en el cual estipularon, tanto hechos incontrovertibles, como prueba documental.[4] El 19 de agosto de 2025, se celebró la Conferencia con Antelación al Juicio y allí las partes informaron que habían estipulado el Contrato de Arrendamiento y de Opción de Compraventa suscrito entre ellos, así como ciertos hechos.[5]

Cónsono con lo anterior, el 30 de septiembre de 2025, los apelados presentaron ante el foro primario ***MOCIÓN DE LA PARTE DEMANDANTE, SOLICITANDO SENTENCIA SUMARIA PARCIAL, EN CUANTO A CLÁUSULA CONTRACTUAL, SOBRE DEVOLUCIÓN DEL DEPÓSITO***.[6] Allí alegaron que según lo pactado por las partes, la falta de inscripción de la propiedad en el Registro de la Propiedad dentro de los veinticuatro meses de la vigencia contrato de opción, causaría la cancelación del contrato de opción de compraventa y la devolución de la opción monetaria de compra entregada por los apelados y recibida por los apelantes. Razonaron los apelados en su solicitud de sentencia sumaria, que toda vez que la propiedad no se inscribió durante el plazo pactado y al no existir controversia sobre este hecho sustancial, procedía -como cuestión de derecho- la devolución del depósito.

---

[3] Orden de 10 de marzo de 2025. Entrada SUMAC 57 TPI
[4] Entrada Núm. 72 de SUMAC TPI.
[5] Entrada Núm. 74 de SUMAC TPI.
[6] Entrada Núm. 75 de SUMAC TPI.

Mediante Orden de 1 de octubre de 2025 el TPI concedió el termino de veinte (20) días a los apelantes para fijar su postura en cuanto a la solicitud de sentencia sumaria parcial de los apelados. El 22 de octubre de 2025, comparecieron los aquí apelantes ante el foro primario, mediante *OPOSICIÓN A MOCIÓN DE SENTENCIA SUMARIA Y MOCIÓN DE SENTENCIA SUMARIA*.[7] Fue la contención de los apelantes ante el TPI, que toda vez que éstos presentaron para inscripción el título el 14 de julio de 2020, dentro del término establecido en el contrato vinculante entre las partes, ellos no incumplieron su obligación, por lo que no procedía la devolución del depósito concernido. Sobre estos extremos los apelantes enfatizaron que presentaron su título en el Registro de la Propiedad el 14 de julio de 2020 y que su posterior inscripción, no causó la cancelación del contrato de opción de compraventa ni implicó incumplimiento de los apelantes con sus obligaciones contractuales.

Sobre estos extremos, mediante *Orden* de 23 de octubre de 2025, el foro primario dio la controversia por sometida para adjudicación.[8]

Mediante *Sentencia Parcial* emitida el 10 de noviembre de 2025, el TPI concluyó que no existía controversia sustancial de hechos que impidieran disponer del asunto de forma sumaria, y que solo restaba aplicar el derecho. A tales fines, en dicha *Sentencia Parcial*, el foro primario acogió como hechos probados las estipulaciones de hechos alcanzadas por las partes

---

[7] Entrada Núm. 77 de SUMAC TPI.
[8] *Véase* Entrada Núm. 78 de SUMAC TPI.

en el Informe de Conferencia con Antelación a Juicio formuladas como sigue:

1. El **5 de marzo de 2020 el Tribunal dictó Resolución en el Caso Civil CU2018-CV00010, sobre Expediente de Dominio.**

2. En aquella, se decretó justificado el dominio de Adolfo Criscuolo Pérez y la Sra. Wilma Valle Ferrer en cuanto a la propiedad con Catastro Núm. 476-022-042-01-000.

3. En virtud de dicha Resolución, los Criscuolo-Valle justificaron su dominio del inmueble que a continuación se describe:

---"RÚSTICA: Parcela Uno (1): parcela de terreno con una cabida superficial de quinientos treinta y seis p unto veintiuno setenta y cinco metros cuadrados (536.2175 m.c.), equivalentes a ero punto trece sesenta y cuatro cuerdas (0.1364 cdas.), ubicada en el Barrio Playa Sardina II, en la carretera estatal novecientos setenta y dos (972), kilómetro tres puntos dos (3.2) del término Municipal de Culebra, Puerto Rico; con lindes por el NORTE, con el Canal de Ensenada Honda, en una alineación de veinticuatro punto trescientos diez (24.310) pies lineales; por el SUR, con Carretera Estatal novecientos setenta y dos (972) en dos (2) alineaciones que suman treinta y uno punto setecientos setenta y nueve (31.779) pies lineales; por el ESTE, con Carretera Estatal novecientos setenta y dos (972) en cuatro (4) alineaciones que suman quince punto setecientos setenta y dos (15.772) pies lineales y por el OESTE, con la Señora Sandra Vázquez Marrero, en dos (2) alineaciones que suman treinta y tres punto novecientos cincuenta y seis (33.956) pies lineales.----------------------
----------------------------------------- Enclava una casa que mide treinta pies de frente por veinte de fondo (30 x 20) de dos (2) plantas; en la primera planta tiene un apartamento estudio deun (1) cuarto con un (1) baño y un (1) marquesina doble con un medio (1/2) baño, pasillo, sala, comedor y cocina y está techada de madera tratada. ------ ---En la segunda (2da) planta está compuesta por comedor, cocina, sala y está techada de madera tratada."---
-----------------------------------------------
---Catastro Núm. 476-022-042-01-000.--------------
-----------------------------

4. El **6 de julio de 2020,** el matrimonio compuesto por Jesús M. Burgos Ayala y Marily Colón Aponte y los esposos Adolfo Criscuolo Pérez y Wilma Valle Ferrer **otorgaron** un **CONTRATO DE ARRENDAMIENTO Y DE OPCIÓN DE COMPRAVENTA.**

5. El precio de compraventa pactado en el CONTRATO DE ARRENDAMIENTO Y DE OPCIÓN DE COMPRAVENTA del 6 de julio de 2020 fue de $595,000.

6. La **Resolución** del **Caso Civil CU2018-CV00010** fue **presentada** en el **Registro de la Propiedad,** para **inscripción, el 14 de julio de 2020, al ASIENTO 2020- 043730-FA01.**

7. **La parte demandante entregó a la parte demandada la cantidad de $50,000.00, por concepto de depósito.**

8. El depósito de $50,000 sería descontado del precio de compraventa.

9. **De la página 5 del CONTRATO DE ARRENDAMIENTO Y DE OPCIÓN DE COMPRAVENTA surge que: "Solo la falta del VENDEDOR de inscribir la propiedad en el Registro de la Propiedad de PR dentro de los _veinticuatro (24) Meses de su vigencia, causará la cancelación del Contrato sin otro recurso o remedio de las partes y la devolución de la Opción Monetaria de Compra recibida por el Vendedor al Comprador"**

10. **La fecha límite que disponía el contrato para que se ejerciera la opción de compra fue el 1 de julio de 2022.**

11. **La Resolución del Caso Civil CU2018-CV00010 fue inscrita el 3 de abril de 2023, al Tomo Karibe, quedando identificada la propiedad como la FINCA 1690.**

12. **El 9 de marzo de 2022 el Sr. Burgos solicitó al Sr. Criscuolo que le devolviera los $50,000.00 del depósito.**

13. El 29 de marzo de 2022 el Sr. Burgos respondió el correo electrónico del Sr. Criscuolo, le solicitó nuevamente la devolución de los $50,000.00 y le indicó que: "En cuanto a la obligación del pago de arrendamiento, este ha sido separado y reservado, hasta tanto se resuelva esta situación".

14. El **19 de mayo de 2022** Adolfo Criscuolo Pérez y Wilma Valle Ferrer presentaron una Demanda de Desahucio contra Jesús M. Burgos Ayala y Marily Colón Aponte, identificada como el Caso Civil Núm. CU2022CV00009.

15. El 19 de octubre de 2022 Jesús M. Burgos Ayala y Marily Colón Aponte presentaron su CONTESTACIÓN A DEMANDA Y RECONVENCIÓN en el Caso Civil Núm. CU2022CV00009, en la cual realizaron las mismas alegaciones y solicitaron los mismos remedios que en la Demanda de marras.

16. El 2 de noviembre de 2022 se dictó Sentencia por Estipulación en el Caso Civil Núm. CU2022CV00009, sobre Desahucio y Cobro de Dinero, en virtud del cual se acordó la entrega de la propiedad al Sr. Criscuolo y su esposa, en o antes del 28 de noviembre de 2022.

Conforme a las anteriores determinaciones de hechos probados e incontrovertidos el foro primario concluyó que en virtud del contrato suscrito por las partes, los apelados pagaron a los apelantes un depósito de $50,000.00 cuya devolución no procedería salvo si de daba lo contemplado en la cláusula sujeta a condición pactada; que dicha condición consistió en que si al 1 de julio de 2022 la propiedad no había sido inscrita en el Registro de la Propiedad, los apelantes debían devolver el depósito a los apelados y que a la fecha del 1 de julio de 2022 no se había producido la inscripción en el Registro de la Propiedad por lo que procedía la devolución del depósito.

En desacuerdo, los apelantes acuden ante nos mediante el recurso de epígrafe, presentado el 5 de diciembre de 2025, y señalan la comisión de los siguientes errores por parte del foro primario:

PRIMER ERROR: EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL CONCLUIR QUE LOS APELANTES INCUMPLIERON EL CONTRATO, AL IGNORAR LA INTENCIÓN DE LOS CONTRATANTES, IGNORAR EL INCUMPLIMIENTO **PREVIO Y SUSTANCIAL** DE LOS RECURRIDOS EN EL PAGO DE CÁNONES DESDE MARZO DE 2022 Y AL IGNORAR LA AUSENCIA TOTAL DEL EJERCICIO DE LA OPCIÓN POR LOS BURGOS-COLÓN, CONTRARIO A LA PRUEBA ESTIPULADA Y A LA TOTALIDAD DEL EXPEDIENTE JUDICIAL.

SEGUNDO ERROR: ERRÓ TRIBUNAL DE PRIMERA INSTANCIA EN SU APLICACIÓN E INTERPRETACIÓN INCORRECTA DE LA LEY HIPOTECARIA AL RESOLVER QUE LOS CRISCUOLO INCUMPLIERON CON INSCRIBIR EL TÍTULO DE LA PROPIEDAD CONFORME AL CONTRATO.

TERCER ERROR: ERRÓ AL NEGARSE A RESOLVER LA RECLAMACIÓN DE RENTAS Y COBRO DE DINERO ADEUDADOS POR LOS BURGOS SIN FUNDAMENTO Y EN AUSENCIA DE CONTROVERSIA REAL SOBRE EL MONTO ADEUDADO Y EL INCUMPLIMIENTO ADMITIDO E INJUSTIFICADO DE LOS BURGOS CONFORME A LA TOTALIDAD DEL EXPEDIENTE JUDICIAL COMO REQUIERE LA REGLA 36.

Posteriormente, los apelados presentaron ante nos *Alegato de la Parte Apelada en Oposición al Recurso.* Allí exponen que no incidió el foro primario al adjudicar la controversia pertinente a la condición pactada por las partes en el contrato de opción, mediante el mecanismo procesal de sentencia sumaria y al concluir que, como cuestión de derecho al tratarse de una obligación sujeta a una condición procedía la devolución del depósito, por no haberse inscrito la propiedad dentro del plazo pactado en el contrato.

-II-

A.

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA. Ap. V, R. 36, tiene el propósito primordial de proveer una solución justa, rápida y económica en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015).

Particularmente, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite que cualquier parte presente una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o alguna parte de la reclamación. *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013). Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o

sea, sobre ningún componente de la causa de acción". Íd.

Solicitada la sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Íd. Es decir, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. Regla 36.3 de Procedimiento Civil, *supra*; *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Ahora bien, según estableció el Tribunal Supremo en el caso *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), los foros revisores utilizarán los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sobre el particular, en *Meléndez González et al. v. M. Cuebas, supra,* pág. 118, el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con

los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. Véase, además, *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

Del mismo modo, el Tribunal Supremo ha reiterado que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o esta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental Inc.,* 148 DPR 420, 433 (1999).

B.

Aunque el Código Civil de 1930 fue derogado mediante la aprobación de la Ley Núm. 55-2020, conocida

como el "Código Civil de 2020", el Artículo 1812 del Código Civil vigente dispone que "[l]os actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma…". 31 LPRA sec. 11717. Debido a que el contrato entre las partes de epígrafe, fuente fundamental de las obligaciones que las vinculan en este pleito, fue firmado antes de la vigencia del Código Civil de 2020, aplican las disposiciones del Código Civil de 1930.

Conforme al Artículo 1206 del Código Civil de 1930, 31 L.P.R.A. ant. sec. 3371, el contrato existe desde que una o varias personas consienten en obligarse respecto de otra a dar una cosa o prestar un servicio. El Artículo 1044 del derogado Código Civil establecía que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos. 31 L.P.R.A. ant. sec. 2994.

De igual forma, el Artículo 1207 del Código Civil de 1930 31 L.P.R.A. ant. sec. 3372 reconoció la libertad contractual, permitiendo que las partes establezcan los pactos, cláusulas y condiciones que estimen convenientes, siempre que no sean contrarios a la ley, la moral o el orden público.

El contrato o pacto de opción de compraventa se trata de un contrato que ha sido definido por la jurisprudencia como, "[…] un contrato consensual, mediante el cual una parte (promitente) le concede a otra (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le

pertenece al promitente. Esta facultad tendrá que ejercitarse dentro de un periodo de tiempo definido por las partes, y tanto el promitente como el optante se beneficiarán del negocio". *SLG Irizarry v. SLG García*, 155 DPR 713, 722 (2001). Esencialmente, el contrato de opción de compra es un contrato preparatorio dirigido al eventual otorgamiento de un contrato de compra y venta. El mismo se distingue por los siguientes elementos esenciales: (1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (de compraventa) sin obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción, y (4) no existe otra condición que no sea la voluntad del optante.[9] No obstante, a pesar de que el contrato de opción se trata de un contrato consensual, la opción de compra es un contrato unilateral, debido a que el optante no está obligado a comprar, contrario al caso del promitente que sí está obligado a venderle al primero, si aquel lo decide.[10]

En lo pertinente, conforme al Artículo 19 de la Ley del Registro de la Propiedad Inmobiliaria (Ley 210-2015), 30 L.P.R.A. § 6034), los títulos inscritos "producen todos sus efectos desde la fecha del asiento de presentación".

Las partes aquí pactaron expresamente los términos de duración, opción y forma de ejercicio, dentro del marco permitido por la ley. Conforme al Artículo 1233 del Código Civil de 1930, cuando los términos de un

---

[9] *Íd.* a la pág. 722.
[10] *Íd.*

contrato son claros, se estará al sentido literal de sus cláusulas.  31 LPRA ant. sec. 3471.

Ahora bien, en cuanto al momento en que las obligaciones son exigibles, el Artículo 1066, del Código Civil de 1930, establecía en lo pertinente lo siguiente:

> **Será exigible desde luego toda obligación cuyo cumplimiento no dependa de un suceso futuro o incierto, o de un suceso pasado, que los interesados ignoren. También será exigible toda obligación que contenga condición resolutoria, sin perjuicio de los efectos de la resolución.[11]**

El elemento característico de estas obligaciones condicionales es la incertidumbre de si el vínculo jurídico adquirirá eficacia o la perderá por razón de cumplirse un hecho futuro e incierto. *Jarra Corporation* v. *Axxis Corporation*, 155 D.P.R. 764 (2000)

Sobre estos extremos, el Artículo 1067 del Código Civil de 1930 al regular las obligaciones sujetas a alguna condición establecía que "[e]n las obligaciones condicionales la adquisición de los derechos, así como la resolución o pérdida de los ya adquiridos, dependerá del acontecimiento que constituya la condición.[12]

Para determinar si la cláusula constituye una obligación sujeta a una condición, precisa revisar el Artículo 1078, del Código Civil de 1930, el cual dispuso en lo pertinente lo siguiente:

> **Las obligaciones para cuyo cumplimiento se haya señalado un día cierto, sólo serán exigibles cuando el día llegue. Entiéndase por día cierto aquel que necesariamente ha de venir, aunque se ignore cuando. Si la incertidumbre consiste en si ha de llegar o no el día, la obligación es condicional, y se**

---

[11] 31 LPRA ant. sec. 3041
[12] 31 L.P.R.A. ant. sec. 3042

> **regirá por las reglas de la Sección precedente.**[13]

En el caso de *In re: Chaves Torres*, 2025 TSPR 32, el Tribunal Supremo abordó la figura jurídica de las **obligaciones condicionales** y explicó lo siguiente:

> "En particular, y sobre el alcance de las mismas, el Artículo 1066 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3041, -- vigente en el momento en que se desarrollan los hechos que motivan el presente litigio --, disponía que serían exigibles todas las obligaciones cuyo cumplimiento no dependiera de un suceso futuro o incierto, o de un suceso pasado, que los interesados ignoraran.
>
> Conforme a ello, en estas obligaciones las partes adquieren o pierden derechos, dependiendo de la ocurrencia del acontecimiento que constituya la condición. Art. 1067 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3042.
>
> Es decir, y a modo ilustrativo, en las obligaciones condicionales están presentes todos los elementos de la obligación, por lo que la misma existe; no obstante, para exigir su cumplimiento o su extinción tiene que ocurrir un hecho incierto. M. García Cárdenas, El nuevo derecho de obligaciones y contratos: Código Civil 2020, 1ra ed., San Juan, Ed. MJ, 2021, pág. 65. En ese sentido, el factor de la incertidumbre es esencial en esta clase de obligaciones. Jarra Corp. v. Axxis Corp., 155 DPR 764, 773 (2001). Véanse, además, L. Díez-Picazo y A. Gullón, Sistema de Derecho Civil: El Contrato en General la Relación Obligatoria, 11ma ed., Madrid, Ed. TECNOS, 2016, T. I, V. II, pág. 152; Puig Brutau, op. cit., pág. 84. Esto es, la incertidumbre de "si el acontecimiento al que se subordina el efecto de la obligación se producirá o no se producirá". Puig Brutau, op. cit., pág. 84. En otras palabras, "si el vínculo jurídico adquirirá eficacia o la perderá por razón de cumplirse un hecho futuro e incierto, o del conocimiento de un hecho pasado, cuya ocurrencia se desconocía". Jarra Corp. v. Axxis Corp., supra, pág. 773
>
> …
>
> Es decir, en las obligaciones sujetas a condición resolutoria, el beneficiado por la misma entra desde luego en el ejercicio de su derecho. Puig Peña, op. cit., pág. 130. Ello es así, pues, "lo típico de la condición resolutoria es que de momento no pone obstáculos al inmediato cumplimiento de lo estipulado, si bien el derecho puede quedar en trance de perderse si se realiza el acontecimiento propio de la condición". (Énfasis omitido). Íd.
>
> En esa línea, conviene señalar aquí que, a diferencia de las obligaciones condicionales suspensivas, en las cuales la obligación es exigible una vez se cumple la condición, en las

---

[13] 31 L.P.R.A. sec. 3061(*ante*)

resolutorias cuando se da la condición ocurre el fin de la obligación y, en consecuencia, cesa de existir el vínculo obligatorio entre las partes. García Cárdenas, op. cit., pág. 76. **En cambio, si la condición resolutoria no se cumple, la obligación "se consolida, es decir, no surge una nueva obligación, sino que subsiste inalterada la original".** Atocha Thom McAn, Inc. v. Registrador, supra, pág. 579 citando a Amézaga v. Agudo, supra, págs. 10-11.

….

En resumen, podemos sentenciar que en las obligaciones condicionales las partes subordinan el nacimiento o la extinción de la obligación al acontecimiento incierto que integra la condición.

-III-

En el caso que nos ocupa el acuerdo vertido en la página 5 del *CONTRATO* DE *ARRENDAMIENTO Y DE OPCIÓN DE COMPRAVENTA* suscrito por las partes, que dispuso que la falta de inscripción de la propiedad en el Registro de la Propiedad dentro de los veinticuatro meses de su vigencia, causaría la cancelación del contrato y la devolución de la opción monetaria de los apelados recibida por los apelantes, **constituye una cláusula sujeta a una condición.**[14] Como cuestión de hecho, la propiedad objeto del contrato de opción se formó mediante Expediente de Dominio, según surge de la Resolución dictada el 5 de marzo de 2020 en el Caso Civil CU2018-CV00010, y estuvo pendiente de calificación y despacho en el Registro de la Propiedad, hasta el **3 de abril de 2023** luego de haber sido presentada para inscripción el **14 de julio de 2020**, al ASIENTO 2020-043730- FA01.

En su primer señalamiento de error, es la contención principal de los apelantes que incidió el foro primario **al concluir que los apelantes incumplieron**

---

[14] *Véase* a la determinación de hechos núm. 9 de la *Sentencia Parcial*.

**el contrato.** Arguyen además, que el foro primario ignoró **el incumplimiento previo** sustancial de los apelados en el pago de cánones desde marzo de 2022 así como la ausencia del ejercicio de la opción por parte de estos.

**De otra parte, en su segundo señalamiento de error, los apelantes sostienen que incidió el foro primario en su aplicación e interpretación incorrecta de la Ley Hipotecaria al resolver que los apelantes incumplieron con inscribir el título de la propiedad conforme al contrato.**

Finalmente, en su tercer señalamiento de error los apelantes sostienen que incidió el foro primario al negarse a resolver la reclamación de rentas y el cobro de dinero de los apelantes sobre las sumas adeudadas por los apelados. Argumentan que sobre estos extremos tampoco había controversia de hechos sobre el monto adeudado por los apelados.

Como cuestión de umbral, es preciso destacar que si bien en el recurso que nos ocupa, los apelantes señalan la comisión de tres errores por parte del foro primario en la Sentencia Parcial objeto de apelación, de la evaluación de los autos y de la referida Sentencia Parcial surge que **los errores PRIMERO y TERCERO se <u>refieren a asuntos pendientes ante el TPI que todavía no han sido adjudicados</u> por el foro primario**. El asunto objeto de la *Sentencia Parcial* se limitó a la adjudicación sumaria sobre el cumplimiento de una condición pactada en el contrato de opción y sus efectos, en lo pertinente a la devolución del depósito.

En cuanto al SEGUNDO señalamiento de error los documentos y hechos estipulados por las partes fueron

suficientes para que el TPI, resolviera sumariamente y como cuestión de derecho adjudicara, si conforme al contrato de opción suscrito por las partes los apelantes venían obligados a devolverle a los apelados los $50,000.00 que le pagaron por concepto de depósito, por haberse cumplido la condición suspensiva establecida en la página 5 del contrato en el que estos acordaron que si dentro de los veinticuatro (24) meses de su firma la propiedad no constaba inscrita en el Registro de la Propiedad, procedería la devolución del depósito.

El 6 de julio de 2020, las partes suscribieron un *CONTRATO DE ARRENDAMIENTO Y DE OPCIÓN DE COMPRAVENTA*. Para esa fecha, los apelantes no habían presentado la Resolución en el Caso Civil CU2018-CV00010, sobre Expediente de Dominio, en el Registro de la Propiedad para la inscripción de la propiedad a su favor. Sobre estos extremos destacamos que en el contrato de arrendamiento con opción a compraventa otorgado el 6 de julio de 2020 las partes prestaron su consentimiento, determinaron el objeto y establecieron su causa, cumpliendo con los requisitos esenciales del Artículo 1213 (31 L.P.R.A. § 3391).

En virtud del referido Contrato, los apelados pagaron a los apelantes cincuenta mil dólares ($50,000.00), por concepto de depósito. Según lo pactado por las partes, los apelantes no tendrían la obligación de devolver dicho depósito, excepto si se cumplía la siguiente condición: "Solo la falta del VENDEDOR de inscribir la propiedad en el Registro de la Propiedad de PR dentro de los veinticuatro (24) Meses de su vigencia, causará la cancelación del Contrato sin otro recurso o

remedio de las partes y la devolución de la Opción Monetaria de Compra recibida por el Vendedor al Comprador". * Es decir, si al 1 de julio de 2022 la propiedad no había sido inscrita en el Registro de la Propiedad, los Criscuolo-Valle tenían que devolverle a los Burgos-Ayala los CINCUENTA MIL DÓLARES ($50,000.00) del depósito.

Es un hecho incontrovertido que como cuestión de hecho **la inscripción ocurrió** el **3 de abril de 2023**. Tampoco existe controversia en cuanto a que, al 1 de julio de 2022 la propiedad no había sido inscrita en el Registro de la Propiedad. Habiéndose cumplido la condición pactada por las partes, nació la obligación de los apelantes de proceder con la devolución del depósito. Ni siquiera invocando el principio de retroactividad de la inscripción, los apelantes podrán liberarse de su obligación de devolver el depósito. Para el 3 de abril de 2023, fecha en que se activó el Artículo 19 de la Ley Hipotecaria, habían transcurrido en exceso los veinticuatro (24) meses pactados en la página 5 del CONTRATO DE ARRENDAMIENTO Y DE OPCIÓN DE COMPRAVENTA, por lo que ya se había cumplido la condición que originó la obligación de los apelados de devolver el depósito.

Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos. 31 L.P.R.A. § 2994. Irrespectivamente del resto de las controversias que, en su día, serán adjudicadas, lo cierto es que la condición suspensiva pactada entre las partes ocurrió y activó la obligación de los apelantes de devolverle a los apelados

la suma de cincuenta mil dólares ($50,000.00) del depósito.

La contención de los apelantes es que, aunque **la Resolución del Caso Civil CU2018-CV00010 fue inscrita el 3 de abril de 2023,** al Tomo Karibe, **quedando identificada la propiedad como la FINCA 1690, en esa fecha, ellos presentaron** l**a Resolución** del **Caso Civil CU2018-CV0001** en el **Registro de la Propiedad, para inscripción, el 14 de julio de 2020, al ASIENTO 2020- 043730-FA01.** Argumentan que por ello, el foro primario debió interpretar que cumplieron con los términos y cláusulas pactadas y que no procedía la devolución del depósito.

Sobre estos extremos, es preciso destacar que la controversia de derecho que nos ocupa no versa expresamente sobre incumplimiento de los apelantes con las cláusulas y términos del contrato, sino sobre **el advenimiento de una condición pactada expresamente en el contrato.** Es por ello, que ante la cláusula contractual clara que estableció la ocurrencia de la condición para que procediera la devolución del depósito, no cabe hablar de intención de las partes ni de incumplimiento contractual en esta etapa.

Los Apelantes arguyen que como conforme al Artículo 19 dela Ley 210-2015, *supra* los títulos inscritos producen sus efectos desde la fecha del asiento de presentación y estos presentaron el documento el 14 de julio de 2020, dentro de los 24 meses establecidos en la cláusula que estableció la condición, el foro primario debió concluir que el efecto legal de la inscripción el **3 de abril de 2023, fuera de dicho plazo**, se retrotrajo al 14 de julio de 2020, por lo que la obligación

registral pactada debió entenderse cumplida mediante la presentación oportuna del título y no procedía la devolución del depósito. Si bien el principio de retroactividad del Artículo 19 de la Ley Núm. 210-2015, invocado por los apelantes garantiza el efecto de la presentación frente a terceros, no altera la condición pactada expresamente por las partes en el contrato, la cual es clara al establecer el requisito de inscripción dentro del término de 24 meses, por lo que se estará al sentido literal de sus cláusulas.

Con estos antecedentes, concluimos que no incidió el foro primario al disponer sumariamente de la controversia de derecho sobre la devolución del depósito, toda vez que no existía controversia de hechos, sobre el contenido de la cláusula incluida en el contrato de opción suscrito por las partes, que estableció una condición resolutoria del contrato de opción y la obligación de los apelantes de devolver el depósito, si dentro de los veinticuatro (24) meses siguientes a la firma del contrato la propiedad no constaba inscrita en el Registro de la Propiedad. Como cuestión de derecho tampoco erró el foro primario al concluir que toda vez que la propiedad no constaba inscrita durante el plazo pactado y al no existir controversia sobre este hecho sustancial, procedía la devolución del depósito.

Reiteramos que conforme a los hechos incontrovertidos, la falta de inscripción de la propiedad en el Registro de la Propiedad dentro de los veinticuatro meses de la vigencia contrato de opción, causaría la cancelación del contrato de opción de

compraventa y la devolución de la opción monetaria de compra entregada por los apelados y recibida por los apelantes, independientemente de la fecha en que los apelantes presentaran el documento en la Registro de la Propiedad.

-IV-

Por los fundamentos anteriormente expuestos, los cuales hacemos formar parte de esta Sentencia, ***confirmamos*** la Sentencia Parcial apelada.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones